# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | |
| v. ) | Criminal No.: 2:09-00800-PMD |
| ) | |
| Tealize Randall, III, ) | |
| Defendant. ) | **ORDER** |
| ) | |
| _____ ) | |

This matter is before the court upon Defendant Tealize Randall, III's, a/k/a "3rd," ("Defendant" or "Randall") Motion to Suppress all evidence relating to a hotel key belonging to Room 320 Comfort Inn Suites in Summerville, S.C. and all evidence found in a search of that room. Specifically, the evidence at issue is one kilogram of cocaine powder and approximately 37.8 grams of crack cocaine was found in a tote bag during a search of Room 320.

Defendant is charged in an indictment alleging that on or about May 2009, and continuing thereafter, Defendant and others knowingly and intentionally did combine, conspire, agree, and have tacit understanding with each other and with others to knowingly, intentionally and unlawfully possess with intent to distribute and distribute cocaine, a Schedule II controlled substance, said conspiracy involving 5 kilograms or more of cocaine, in violation of Title 21, United States Code, sections 841(a)(1) and 841(b)(1)(A). All in violation of Title 21, United States Code 846. In addition to the conspiracy charge, the indictment alleges that on or about December 14, 2009, in the District of South Carolina and elsewhere, Defendant knowingly, intentionally, and unlawfully did possess with intent to distribute 500 grams or more of cocaine and 5 grams or more of cocaine base (commonly known as "crack" cocaine), both Schedule II controlled substances; in violation of Title 21, United States Code, sections 841(a)(1), 841(b)(1)(A) and 841 (b)(1)(B).

1

A hearing was held on this motion on November 18, 2010.

## BACKGROUND

On December 14, 2009, law enforcement received information that Antwan Maurice Heyward, a/k/a "Wink," ("Heyward") was travelling from Texas to the Charleston area and had checked into a Hampton Inn in Summerville. Law enforcement was interested in Heyward because a federal bench warrant had been issued for his arrest as a result of a December 8, 2009 grand jury indictment charging Heyward with conspiring to distribute more than five kilograms of cocaine in the District of South Carolina.

Law enforcement was advised that Heyward would be travelling as a passenger in a silver 1997 Ford Taurus, S.C. license plate EMR 427. At approximately 5:10 pm, agents observed the vehicle traveling down I-26 toward Charleston. Jones was driving the vehicle and Heyward was the passenger. After agents followed the vehicle for approximately two miles, Jones quickly moved from the center lane to an exit ramp. The agents activated their blue lights, Jones pulled into a Taco Bell, the traffic in the Taco Bell parking lot prevented Jones from exiting the parking lot, and agents approached the vehicle.

The DEA agent approaching the vehicle noticed that Heyward was attempting to conceal something under his shirt. That item was seized. It was approximately .75 of a kilogram of cocaine. Upon his arrest, Heyward began to cooperate with authorities. He informed the agents that he and Randall had travelled together from Texas to the Charleston area, that they had brought cocaine with them, and that they hoped to sell the cocaine in South Carolina. Heyward additionally divulged that at least one kilogram of the cocaine they brought with them from Texas was located in Room 320 of the Comfort Inn Suites in Summerville, S.C. Heyward explained that he rented the room under the alias Miles Humphrey, Randall was currently staying

in Room 320, and Randall was the owner of the cocaine that the two brought from Texas. Heyward signed a written form consenting to a search of Room 320.

During the agents conversation with Heyward, Randall was spotted in the Hampton Inn parking lot next to the Comfort Inn Suites. After Heyward confirmed Randall's identity, the agents took Randall into custody. He had a cell phone and a Comfort Inn Suites key. He denied that he was staying at the Comfort Inn Suites, claimed the key was old, claimed the key was not his, and did not give any consent to search the room. However, law enforcement confirmed with the hotel's management that the key taken from Randall was the key to Room 320.

Pursuant to Heyward's consent to search, law enforcement conducted a search of Room 320. This search was done without a warrant and without Randall's consent. A tote bag containing approximately one kilogram of cocaine powder and approximately 37.8 grams of crack cocaine was found. Defendant moves this court to suppress that evidence.

## ANALYSIS

A search conducted after a subject has given consent is constitutionally permitted. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Law enforcement may conduct a search without a warrant or probable cause based on an individual's consent and the evidence discovered during the search can be admissible at trial. *See id.* The person does not need to be informed of his right to refuse consent; the search is permissible as long as the consent is given knowingly and voluntarily. *United States v. Boone*, 245 F.3d 352, 362 (4th Cir. 2001). "Written consent supports a finding that consent was voluntary." *Id.* Heyward consented to the search of Room 320. The consent was given in writing and is not contested.

The United States Supreme Court has made "clear that when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent

was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171 (1974). This does not mean that any third party with a property interest in the property may consent to a search. *Id.* However, when the "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched," the third party may validly grant consent to search. *Id.* 415 U.S. at 171, n. 7 (noting that *Chapman v. United States*, 365 U.S. 610 (1961) found that a landlord could not validly consent to the search of a house he had rented to another, and *Stoner v. California*, 376 U.S. 483 (1964) held that a night hotel clerk could not validly consent to search of customer's room).

In *United States v. Melgar*, the Seventh Circuit held that the contents of a purse "discovered by police during the course of a search to which the renter of the hotel room had validly consented" were discovered pursuant to a valid consent search even though the purse was a closed container and did not belong to the person who gave consent to search the room. 227 F.3d 1038, 1041 (7th Cir. 2000). In *United States v. Burns*, the court found that a co-habitant of a hotel room can validly consent to search of that room where that person "rented the room, had a key, and was the sole registered occupant." 298 F.3d 523, 542 (6th Cir. 2002).

Heyward was not an occupant of the room and did not have a key. However, he rented the room (albeit under an alias). While he did not have a key, as the registered renter he had the ability to get a key from the front desk at any time his wished. He could enter the room unannounced using that key. His ability to access the room whenever he wished through the use

of an extra key, generally available at the front desk of a motel, provided Heyward with more than simply a property interest in the hotel room analogues to a landlord or hotel employee. His joint access to the room is sufficient that Heyward was able to consent to search of the room.

In addition to Heyward's consent to search, Randall denied he was staying in the hotel room. In order to challenge the search, Randall must have had a "reasonable expectation of privacy." *See Rakas v. Illinois*, 439 U.S. 128, 143 (1978). The abandonment of property results in loss of an expectation of privacy. *United States v. Leshuk*, 65 F.3d 1105, 1111 (4th Cir. 1995) (stating that "[t]he law is well established that a person who voluntarily abandons property loses any reasonable expectation of privacy in the property and is consequently precluded from seeking to suppress evidence seized from the property") (citing *Abel v. United States*, 362 U.S. 217, 241, (1960); *United States v. Clark*, 891 F.2d 501, 506 (4th Cir.1989) (per curiam)). The Fourth Circuit has found that denial of ownership is tantamount to abandonment. *Id. See also United States v. Washington*, 677 F.2d 394, 396 (4th Cir. 1982).

These cases deal with situations where a Defendant denied ownership of a suitcase or a bag. In this case, Defendant denied having a possessory interest in his lodging, rather than ownership of a bag or suitcase. However, this difference does not change the analysis. If a person says they do not own a bag, they cannot later claim an expectation of privacy in that bag. Likewise, if a person tells law enforcement that they are not staying in hotel room, then they should not be allowed to later claim an expectation of privacy in that hotel room.

Randall denied he was staying at the Comfort Inn Suites Room 320 and he denied the key to the room was his. When he denied any possessory interest in the hotel room he lost any expectation of privacy. Therefore, Randall cannot contest the search as he did not have an expectation of privacy.

Additionally, Defendant argues that all of the evidence should be suppressed because the key cannot currently be located. However, the key is not necessary to show that Heyward consented to the search or that Defendant denied he was staying in Room 320.

## **CONCLUSION**

Therefore, based on the foregoing, the court **DENIES** Defendant Tealize Randall, III's Motion to Suppress.

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**December 14, 2010**
**Charleston, SC**